845 So.2d 459 (2003)
Mary BEL, Individually and on Behalf of the Estate of Her Husband, Douglas Bel, Linda B. Mire and Carolyn B. Heard
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Allstate Insurance Company, Regal Insurance Company, Craig Lewis, Individually and dba Craig Lewis State Farm Agency.
No. 2002 CA 0360.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
Writ Denied May 30, 2003.
*460 Craig J. Robichaux, Mandeville, Counsel for Plaintiffs/Appellants Mary Bel, Linda B. Mire, and Carolyn Heard.
Adrianne L. Baumgartner, Covington, Counsel for Defendant/Appellee State Farm Mutual Automobile Insurance Company.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In this wrongful death and survival action, plaintiffs, Mary Bel, individually and on behalf of the estate of her husband, Douglas Bel, Linda B. Mire, and Carolyn B. Heard, appeal the trial court's granting of defendant's, State Farm Mutual Automobile Insurance Company (State Farm), motion for summary judgment. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 3, 1997, Douglas Bel was involved in a vehicular accident wherein he was fatally injured. On the date of the accident, Douglas Bel, and his wife Mary Bel, had in effect an automobile insurance policy with State Farm. This policy provided for 100/300 limits on liability coverage as well as 100/300 limits on uninsured/underinsured motorist (UM) coverage. Additionally, Douglas and Mary Bel had a *461 Personal Liability Umbrella Policy (PLUP) with a $1,000,000.00 limit on liability coverage. However, prior to the date of the accident, Douglas Bel executed a waiver on April 20, 1993, rejecting UM coverage under the PLUP on all vehicles.
As a result of the aforementioned accident, Mary Bel, individually and on behalf of the estate of her husband, Douglas Bel, Linda B. Mire, and Carolyn B. Heard filed a petition for damages on April 24, 1998, naming State Farm, Douglas and Mary Bel's UM carrier, as a defendant.[1] Thereafter, on March 26, 2001, State Farm filed a motion for summary judgment, arguing that as a matter of law, the UM waiver signed by Douglas Bel precludes UM coverage under the PLUP.
In response, plaintiffs filed a Supplemental and Amending Petition, arguing that La. R.S. 22:1406 is unconstitutional because it violates the Equal Protection Clause, Due Process Clause, and/or other provisions of the Louisiana and United States Constitutions. Following an August 15, 2001 hearing on State Farm's motion for summary judgment, the trial court, in a judgment signed September 24, 2001, granted State Farm's motion, dismissed plaintiffs' claims against State Farm with prejudice, and designated said judgment as final. Additionally, the trial court ordered that State Farm did not provide UM coverage under the PLUP, that the waiver signed by Douglas Bel was valid, and that La. R.S. 22:1406 does not violate the Due Process or Equal Protection clauses of the Louisiana or United States Constitutions.

ASSIGNMENTS OF ERROR
The plaintiffs now appeal from this judgment and assert the following assignments of error:
1. The trial court erred as a matter of law in concluding that the rejection of UM coverage by one named insured is a valid rejection of UM coverage as to all insureds under an automobile policy.
2. The trial court erred in failing to finding [sic] LSA-R.S. 22:1406(D)(1)(a)(i) unconstitutional to the extent that one insured may waive UM coverage purchased by [sic] funds belonging to another insured, and insuring the separate and distinct insurable interests of that insured.

DISCUSSION

Standard of Review
Appellate courts review the granting of a motion for summary judgment de novo, using the same criteria governing the trial court's consideration of whether summary judgment was appropriate. According to La. C.C.P. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. Esteve v. U.S. Agencies Casualty Insurance Co., 01-1009, p. 3 (La.App. 1st Cir.5/10/02), 818 So.2d 998, 1001.

Validity of UM Rejection Executed by One Named Insured
Louisiana Revised Statutes 22:1406(D)(1)(a)(i), which governs the issuance of UM coverage, requires that coverage exist in amounts not less than limits of *462 bodily injury liability provided by the policy. However, that same section, at the time the UM waiver was signed in 1993, also stated in relevant part:
[T]he coverage required under this Subsection shall not be applicable when any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900. [Emphasis added.]
Despite the clear wording of the above provision, the plaintiffs argue on appeal that the rejection, obtained by State Farm and executed by Douglas Bel only, is not valid as to Mary Bel, the other named insured under the PLUP. In particular, plaintiffs claim that language found in another subpart of La. R.S. 22:1406(D)(1)(a) is inconsistent with the above statutory provision and therefore, an ambiguity exists as to who is required to sign a rejection of UM coverage. At the time the rejection at issue was signed, La. R.S. 22:1406(D)(1)(a)(ii) provided, that "[t]he form [upon which a rejection is made] shall be provided by the insurer and signed by the named insured or his legal representative." (Emphasis added.) Based on this additional language, plaintiffs argue that, when as here, there are multiple named insureds, each insured named in the policy must sign a rejection in order for that rejection to be valid.
However, we find this argument to be without merit. When interpreting a statute, we first examine the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and its letter shall not be disregarded in search of the intent of the legislature. Barrilleaux v. NPC, Inc., 98-0728, p. 4 (La.App. 1st Cir.4/1/99), 730 So.2d 1062, 1064, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672. The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section, clause, sentence, or word becomes superfluous or meaningless. Barrilleaux, 98-0728 at 4, 730 So.2d at 1065.
In the instant case, any insured named in the policy may reject UM coverage if it is "in writing, as provided herein." La. R.S. 22:1406(D)(1)(a)(i). This language thereby refers the reader to look to other sections of the statute for requirements of the writing. In the following subsection, (D)(1)(a)(ii), a description of those requirements is found. Among those requirements are that the rejection be on a form designed and provided by the insurer and signed by the named insured or his legal representative. La. R.S. 22:1406(D)(1)(a)(ii). In reading these two sections together, it is clear that "the named insured or his legal representative" merely refers to the person who is "any insured named in the policy" who elects to reject UM coverage in accordance with La. R.S. 22:1406(D)(1)(a)(i).
Having resolved that issue, it is evident that the wording of the statute clearly allows any insured named in the policy to reject UM coverage. Douglas Bel was a named insured under the PLUP,[2] and therefore clearly had the authority under the above statute to execute a valid waiver of UM coverage under that policy. See Oncale v. Aetna Casualty and Surety Co., *463 417 So.2d at 474-475; Tucker v. Valentin, 01-755, pp. 4-6 (La.App. 5th Cir.12/26/01), 807 So.2d 292, 294-295; Dronet v. Safeway Insurance Co., 95-1471, p. 5 (La.App. 3 Cir. 11/07/97), 703 So.2d 97, 100-101; Huguet v. State Farm Mutual Automobile Insurance Co., 619 So.2d 186, 188 (La.App. 3rd Cir.), writ denied, 625 So.2d 1059 (La. 1993).

Constitutionality of La. R.S. 22:1406
Plaintiffs additionally argue that La. R.S. 22:1406(D)(1)(a)(i), in particular that portion allowing "any insured named in the policy" to reject UM coverage and have that waiver bind any other insured under the policy, is unconstitutional as it deprives Mary Bel of her interest in the insurance policy.[3] However, the interest that Mary Bel is allegedly deprived of is community in nature, as it is derived from the community property laws.
Mary Bel claims to have an interest in the insurance policy, which insured against her potential loss, because her property, albeit community property, was used to pay for that coverage. Therefore, to the extent that community funds were used to purchase the policy/coverage, the policy/coverage is community property.[4]See La. C.C. art. 2338. As such, any interest or right based on ownership that Mary Bel asserts derives from, and is therefore governed by, the community property laws of this state.
Louisiana Civil Code article 2346 states that "[e]ach spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law." As there are no applicable exceptions in law to this codal provision,[5] the community property laws clearly provide, independently of the statute at issue, that either spouse can take action to dispose of or manage community property. To the extent the PLUP, and coverage contained therein, is community property, Douglas Bel had the authority to reject/dispose of UM coverage in accordance with La. C.C. art. 2346.[6]
Therefore, we find that because the community property laws govern Douglas Bel's ability to reject UM coverage under the PLUP, despite the language contained in La. R.S. 22:1406(D)(1)(a)(i), we do not reach the issue of whether the provision allowing any named insured to reject UM coverage is unconstitutional. It has consistently been held that courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of this is essential to the decision of the case or controversy. State v. Fleming, 01-2799, p. 4 (La.6/21/02), 820 So.2d 467, 470.

Meaningful Selection
Finding Douglas Bel was authorized, by La. C.C. art. 2346 and La. R.S. *464 22:1406(D)(1)(1)(i), to effectuate a valid waiver of UM coverage under the PLUP, we next address plaintiffs' argument that, though facially valid,[7] the rejection form fails to offer the insured any meaningful selection.
The insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. Tugwell v. State Farm Insurance Co., 609 So.2d 195, 197 (La.1992). However, a form is not valid if it fails to inform the applicant of an available option or forecloses an available option. Daigle v. Authement, 96-1662, p. 4 (La.4/8/97), 691 So.2d 1213, 1215.
The UM rejection form at issue listed three options: (1) UM coverage with the full policy limits, (2) UM coverage with limits of $500,000, or (3) rejection of UM coverage. Additionally, the affidavit of Angie Wells, State Farm's Underwriting/Operations Superintendent, stated that at the time of the UM coverage rejection, State Farm was qualified in this State to issue only a PLUP with UM coverage limits equal to the PLUP policy limit, lesser limits of $500,000, or no UM coverage. In Perez v. Progressive Insurance Co., 99-956, pp. 5-6, (La.App. 5th Cir.1/25/00), 751 So.2d 1014, 1016, writ denied, 00-0531 (La.3/31/00), 759 So.2d 76, the fifth circuit was presented with an opportunity to rule on this same issue, with a form identical to that at issue in the instant case. In Perez, State Farm submitted an affidavit similar to that submitted in the instant case, stating what UM coverage State Farm was qualified to issue under the state rating guidelines. Perez, 99-956 at 4, 751 So.2d at 1014. The fifth circuit found that the form at issue complied with applicable state law in that it gave the insured a clear, meaningful choice between his three legal options, and no legal option was foreclosed.
Therefore, based on Perez and the affidavit submitted by State Farm, we find that the rejection form did offer Douglas Bel a meaningful selection in accordance with the law as outlined above and therefore, plaintiffs' argument is without merit.

Knowingly Made Rejection
Finally, plaintiffs contend that even though valid, the rejection was not made knowingly and La. R.S. 22:1406(D)(1)(a)(i) states that a properly completed form only creates a rebuttable presumption that the insured knowingly rejected coverage. However, in the instant case, plaintiffs do not offer any evidence that Douglas Bel did not knowingly execute the waiver. The record contains the deposition testimony of Mary Bel and Craig Lewis, the State Farm agent, who both testified that Douglas and Mary Bel met with Craig Lewis on several occasions, whereupon UM coverage was discussed and explained to the Bels. The plaintiffs, however, argue that Mary Bel did not *465 understand and was confused by those discussions and explanations. As Douglas Bel, and not Mary Bel, was the insured who executed the UM rejection, we find this reliance misplaced. Additionally, the evidence as presented shows that Douglas Bel was informed of UM coverage and thereafter signed the UM rejection on April 20, 1993. A person who signs a written document is presumed to have knowledge and understanding of that which he signs. Esteve, 01-1009 at 10, 818 So.2d at 1005. Therefore, we find there is no genuine issue of material fact as to Douglas Bel's knowledge and therefore, this argument also is without merit.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment granting State Farm's motion for summary judgment and dismissing plaintiffs' claims against State Farm with prejudice. All costs of this appeal are to be borne equally by the appellants, Mary Bel, individually and on behalf of the estate of her husband, Douglas Bel, Linda B. Mire, and Carolyn B. Heard.
AFFIRMED.
NOTES
[1] The petition also named as defendants Anetta Leblanc, Melinda Leblanc, Regal Insurance Company, Allstate Insurance Company, and Craig Lewis, individually and dba Craig Lewis State Farm Agency, none of whom are parties to the instant appeal.
[2] In examining the PLUP, we notice that only Mary Bel is listed on the declaration page as the named insured. However, in accordance with the definitions contained in the policy, "named insured" also includes a spouse who resides in the same household as the person listed as the named insured on the declarations page. See Oncale v. Aetna Casualty and Surety Company. 417 So.2d 471, 474 (La.App. 1st Cir.1982).
[3] It appears from plaintiffs' argument that only Mary Bel is alleged to have been deprived of a property right by La. R.S. 22:1406(D)(1)(a)(i).
[4] Both parties acknowledge in their briefs that the funds used to purchase the insurance policy/coverage were community property, or that the policy/coverage itself was community property.
[5] We note that La. C.C. art. 2347, requiring the concurrence of both spouses for alienation, encumbrance or lease of community immovables, all or substantially all of the assets of the community, and movables issued or registered as provided by law in the names of both spouses jointly does not apply. The insurance policy, and coverage contained therein, is not an immovable nor is it a movable that is to be issued to both spouses jointly as provided by law.
[6] Plaintiffs have not asserted that La. C.C. art. 2346 is unconstitutional and therefore, we do not address this issue.
[7] Plaintiffs do, however, argue that the form is not valid, to the extent that there is no proof that the form was approved by the Commissioner of Insurance, as required by law. However, at the time the waiver was signed in 1993, the law did not require the rejection form to be approved by the Commissioner of Insurance. Louisiana Revised Statutes 22:1406(D)(1)(a)(i) was amended by 1997 La. Acts 1476, and now provides in part that "the rejection ... shall be made on a form prescribed by the commissioner of insurance." However, this amendment was not to be effective until 120 days after "premium reduction day," September 6, 1998.