807 So.2d 292 (2001)
Billie Ann TUCKER and Wayne M. Tucker,
v.
Ibarra VALENTIN, et al.
No. 01-CA-755.
Court of Appeal of Louisiana, Fifth Circuit.
December 26, 2001.
*293 Joel Levy, Marrero, LA, Attorney for Appellant.
Todd A. Hebert, New Orleans, LA, Attorney for Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiffs/Appellants, Billie and Wayne Tucker, appeal the summary judgment granted in favor of Defendant, Progressive Insurance Company. The Tuckers assert that the trial court erred in finding that their rejection of uninsured motorist coverage was valid. For the following reasons, we affirm.
On December 30, 1999, an accident occurred at the intersection of U.S. Highway 90 and Interstate 310 in St. Charles Parish, when a vehicle driven by defendant, Ibarra Valentin, collided with Plaintiff, Wayne Tucker's, car. As a result of the accident, Wayne and Billie Tucker, ("the Tuckers"), filed suit in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, and named Progressive Security Insurance Company, ("Progressive"), as a Defendant. The Tuckers alleged that Progressive had issued a policy to them which provided for uninsured/underinsured motorist coverage. Progressive filed a Motion for Summary Judgment, asserting that the Tuckers had rejected uninsured/underinsured motorist coverage when applying for their policy. The Tuckers also filed a Motion for Summary Judgment on this same issue, arguing that their rejection of uninsured/underinsured motorist coverage was invalid.
The following evidence was presented in support of Progressive's Motion for Summary Judgment: Progressive issued an automobile liability policy to Wayne Tucker, which also listed Billie Tucker as an insured driver under the policy as well. The policy had an effective date of November 1, 1999 and was to remain in effect until November 1, 2000. Cynthia Alleman, a representative of the agency who sold the policy, Cahill Insurance Services, testified in her deposition that on November 1, 1999, Mrs. Tucker indicated to her that she did not want uninsured coverage. At that time, Alleman then provided Mrs. Tucker with the insurance policy form which included an option not to obtain uninsured/underinsured motorist coverage. Mrs. Tucker indicated on the form that she did not want uninsured/underinsured motorist coverage, placed her husband's initials next to the appropriate selection, and further signed her husband's name to the form, dating it November 1, 1999.
*294 The trial court held that the waiver of UM coverage by the Tuckers was valid, and granted Progressive's Motion for Summary Judgment. The Tuckers timely filed this appeal.

Law and Analysis
In their sole assignment of error, the Tuckers assert that the trial court erred in granting Progressive's Motion for Summary Judgment and in finding that the rejection of UM coverage was valid.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[2] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[3] There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[4] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A material fact is one that would matter on the trial of the merits.[5]
LSA-R.S. 22:1406, which addresses the issue of uninsured motorist coverage, states, in relevant part, under section D(1)(a)(i):
[T]he coverage required under this Subsection is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item D(1)(a)(ii) of this Subsection. (Emphasis provided).
Progressive argues that under the language of section D(1)(a)(i), cited above, Billie Tucker, as an insured named on the policy, had the ability to validly sign the UM rejection form. The Tuckers insist, however, that the controlling portion of the statute, as it relates to this case, is found in section D(1)(a)(ii), which states that, "The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative." (Emphasis added). The Tuckers argue that the named insured, Wayne Tucker, did not sign the UM rejection form, nor was Billie Tucker his legal representative.
In Bonnette v. Robles,[6] the Second Circuit addressed the issue of whether a named insured's spouse, was an "insured named in the policy" entitled to select lower limits of UM benefits, in spite of the fact that the policy did not designate her as a named insured. The Bonnette court held that under the statutory provision of LSA-R.S. 22:1406 D(1)(a)(i), Mrs. Bonnette was authorized to sign the UM waiver, since she qualified as "any insured *295 named in the policy".[7] The court further concluded that even had Ms. Bonnette signed only on her husband's behalf, she would be considered "his legal representative" under the provisions of LSA-R.S. 22:1406.[8]
In Dronet v. Safeway Insurance Co.,[9] the Third Circuit addressed the issue of whether a wife's "alleged forgery" of her husband's signature on a rejection form for uninsured motorist coverage rendered the rejection invalid. The court in Dronet concluded:
[E]ven assuming that Connie Dronet did sign the rejection on behalf of her husband, the UM rejection was still valid. La.-R.S. 22:1406 D(1)(a)(i) authorizes a rejection of UM coverage by "any insured named in the policy" provided such rejection is in writing. As Connie Dronet was a named insured, she had the ability to reject UM coverage in her own right. [Citations omitted].
The Tuckers assert, however, that exclusion agreements must be signed by the named insured, citing the case of Oliver v. Ste. Marie.[10]Oliver, however, is distinguishable because that case addressed the issue of named driver exclusions and the question of who may exclude members of a household from coverage. The statute relied upon by the court in Oliver, LSA-R.S. 32:900, also does not specifically address the proper form by which UM coverage can be rejected. Accordingly, we find the Third Circuit's holding in Oliver to be inapplicable to the present facts.
Based on the evidence presented by Progressive in support of its Motion for Summary Judgment, the trial court found that Billie Tucker expressed an intent to not receive UM coverage in the policy under which she was insured, and further fulfilled the statutory requirement to reject such coverage under LSA-R.S. 22:1406. For the foregoing reasons, we cannot say that the trial court's finding was in error. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Bua v. Dressel, 96-79 (La.App. 5th Cir.5/28/96), 675 So.2d 1191; writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348; citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
[2] Tassin v. City of Westwego, 95-307 (La.App. 5th Cir.12/13/95), 665 So.2d 1272.
[3] Rowley v. Loupe, 96-918 (La.App. 5th Cir.4/9/97), 694 So.2d 1006.
[4] Id. at 1008.
[5] J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5th Cir.2/14/96), 670 So.2d 1305.
[6] 32,191 (La.App. 2 Cir. 8/18/99), 740 So.2d 261.
[7] Id. at 263.
[8] Id.
[9] 95-1471 (La.App. 3 Cir. 11/07/97), 703 So.2d 97.
[10] 97-1469 (La.App. 3 Cir. 7/1/98), 715 So.2d 722.